UNITED STATES BANKRUPTCY COURT  **NOT FOR PUBLICATION**

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:

JOYCE E. BROWN,

        Debtor.

Chapter 11

Case No. 07 B 22631 (ASH)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**A P P E A R A N C E S :**

**JOYCE E. BROWN, Debtor** *Pro Se*
**9 Weaver Street**
**Scarsdale, NY 10583**

**LAW OFFICES OF JEFFREY S. GREENE, P.C.**
**Attorneys for Secured Creditor**
**By:  Jeffrey S. Greene, Esq.**
**One Barker Avenue**
**Second Floor**
**White Plains, NY 10601**

**ADLAI S. HARDIN, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

### DECISION AND ORDER ANNULLING AUTOMATIC STAY *NUNC PRO TUNC*

        Secured creditor Tribeca Lending Corporation ("Tribeca") moves for an order annulling the automatic stay *nunc pro tunc* in order to validate a foreclosure sale held on July 10, 2007.  Debtor Joyce E. Brown ("Joyce") and her husband and co-obligor Kofi Osae-Kwapong ("Kofi") oppose the motion and seek an opportunity to confirm a plan in this Chapter 11 case.[1]  Because Joyce and Kofi have between them filed six (6) prior bankruptcy cases, and because they have not demonstrated that there is any reasonable likelihood that they will be able to propose a confirmable plan and comply with the obligations under the Tribeca mortgage, the motion is granted.

---

[1]     Joyce filed her voluntary petition under Chapter 11 *pro se* on July 9, 2007.  The instant motion was filed by Tribeca on October 23, 2007.  By letter dated November 9, 2007 debtor's putative attorney, Rick S. Cowle, Esq., advised the Court that "I was retained by the above-referenced debtor Joyce Brown to make a limited appearance on her behalf in order to oppose the pending motion by Tribeca Lending Corporation."  No motion has been filed by or on behalf of the debtor to retain attorney Cowle in accordance with Section 327(a) of the Bankruptcy Code, and his retention has not been approved by this Court.  In the absence of such a motion and approval by this Court, attorney Cowle may not appear in this Chapter 11 case and may not be paid any fees or expenses out of the debtor's estate.

**Jurisdiction**

This Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b) and 157(a) and the standing order of referral to bankruptcy judges dated July 10, 1984, signed by Acting Chief Judge Robert J. Ward.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

**Background**

Joyce and Kofi purchased their residence at 9 Weaver Street, Scarsdale, New York in 1997 for $550,000, financing the purchase with a mortgage.  They defaulted on the original mortgage and a Judgment of Foreclosure and Sale was entered against them in the State Court.  Beginning in May 2003, Joyce and Kofi filed five bankruptcy cases in order to block scheduled foreclosure sales by the mortgagee.  After their fifth bankruptcy case was dismissed in June 2005, Joyce and Kofi sought to refinance their debt with Tribeca.

In July 2005 Tribeca loaned Joyce and Kofi $910,000 secured by a mortgage on their residence.  The mortgage was duly recorded.  Joyce and Kofi soon defaulted on the mortgage, and on October 17, 2006 a Judgment of Foreclosure and Sale was entered in the Supreme Court of Westchester County, reciting that the amount due as of September 29, 2006 was $1,015,991.48, together with additional interest and costs.  Since October 2006, Joyce and Kofi have filed two more bankruptcy cases (including the instant case), both on the eve of a foreclosure sale.

The dates and filing parties of these seven bankruptcies are as follows: (1) May 21, 2003, filed by Kofi and dismissed August 18, 2003; (2) November 12, 2003, filed by Kofi and dismissed February 18, 2004; (3) April 13, 2004, filed by Joyce and dismissed September 6, 2004; (4) November 30, 2004, filed by Kofi and dismissed February 1, 2005; (5) March 22, 2005, filed by Joyce and dismissed June 8, 2005; (6) December 1, 2006, filed by Kofi and dismissed September 18, 2007; and (7) the present case filed by Joyce on July 9, 2007.

As was the practice of these obligors, Joyce's present bankruptcy was filed the day before a foreclosure sale which was scheduled for July 10, 2007.  However, Joyce and Kofi did not give any notice to Tribeca, or its attorneys, or the court-appointed Referee, Joseph A. Vita, Esq., of Joyce's July 9

bankruptcy filing. Accordingly, the foreclosure sale proceeded under the direction of Mr. Vita, and Tribeca was the high bidder.

There is no dispute that as of October 12, 2007 Joyce and Kofi owed Tribeca $1,173,642.68. Joyce now asserts that "the home is presently valued around 1.3 million dollars," a valuation which is highly questionable given the fact that Kofi represented to the Court under oath in a January 30, 2007 affidavit that "I estimate that the Home is worth approximately $1.1 million" and it is commonly accepted that the current market for residential real estate in Westchester has declined in 2007 or is, at best, level. In any event, there can be no dispute that there is little if any equity in Joyce and Kofi's real estate, and the mortgage loan is almost certainly undersecured.

Joyce has asserted that the Tribeca mortgage "had a monthly payment of $10,059.30 at the time of filing" (Debtor's Opposition ¶ 31). Joyce asserts that she is currently earning "about $6,000/month in gross income" (Affidavit sworn to November 7, 2007 ¶ 10). Kofi engages as a sole practitioner in "a business which specializes in arranging financing for the construction of bridges and other infrastructures in Africa" (Debtor's Opposition ¶ 8). Although the business apparently flourished in the late 1990s, "[a]round 2002, the economy slowed in the African countries and foreign loans dried up" (*id.* at ¶ 11). As a consequence, it appears that Kofi has had little or no income for the last several years and has no income now.

Kofi states in his affidavit sworn to November 7, 2007 "I recently received a confirmation that one of my large deals is finally coming into fruition and will begin to close in 2008" and that "[t]his deal will bring commissions of $1,185,166.00 to my company (see attached letter)" (Affidavit ¶¶ 16, 17). The "attached letter" relates to a supply contract for panel bridges for the Department of Feeder Roads in the Republic of Ghana. The letter states:

> The current status of the contract with the Ministry of Highway and their Dept. of Feeder Roads is as follows:
>
> 1. The application for an export guarantee is with Export Development Canada. Today the EDC requested clarification on 6 issues. We will work to provide the EDC with the clarifications by November 9.

2. The Fortis Bank who will be providing the loan to Ghana for the purchase of the bridges is awaiting the EDC's final decision on the guarantee. Once the guarantee is in place it may take another 2 weeks for Fortis to draft the loan documents.

3. The loan documents will be submitted to the Minister of Finance for Ghana for comment and approval. Since the MOF will take the documents to the country's Parliament, I would estimate the approval process could take 3 months since the holidays are fast approaching.

4. Completion of the tasks 1 through 3 above take us out to the second quarter of 2008 as to when the delivery of the bridges would commence. Delivery of the 100 bridges would continue for approximately 3.5 years from the commencement date.

The approximate commission for Terra Finance attributable to the sale of these bridges and services is $1,185,166.00 USD. The commission would be paid to Terra incrementally as the bridges ship and as Acrow receives its payments.

Kofi further states in his affidavit that "I recently landed some consulting work which will pay me a net income of $9,000 to $10,000 per month, beginning some time next month (December 2007)." Finally, Joyce and Kofi have annexed an affidavit of a "childhood friend" of Kofi named Kwabena Akufo who states that "I have committed to my friend, Kofi Osae-Kwapong, to lend him Fifty Thousand Dollars ($50,000.00) by the end of this month (November 30, 2007). I have the savings and resources available to make such a loan."

## **Discussion**

Tribeca has unquestionably demonstrated cause requiring the Court to grant relief from the automatic stay under Section 362(d)(1) of the Bankruptcy Code. The statute provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

The undisputed indebtedness of Joyce and Kofi to Tribeca of $1,173,642.68 as of October 2007, on a $910,000 loan dating from July of 2005, demonstrates that these obligors are egregiously in default under their home mortgage loan. Based upon Kofi's January 30, 2007 affidavit and the broker's price opinion annexed as Exhibit C to Tribeca's Response to the Debtor's Opposition, it

- 4 -

is virtually certain that the value of the property is $1.1 million or less and, therefore, that the mortgage loan is undersecured.

Joyce and Kofi have had ample time to come to terms with their financial problems and they have repeatedly filed for bankruptcy to forestall foreclosure of their home. Prior to the July 2005 refinancing with Tribeca, Joyce and Kofi filed five (5) separate bankruptcies between May 21, 2003 and March 22, 2005, each on the proverbial "eve of sale" requiring cancellation of court-ordered foreclosure sales. Within fifteen months of their July 2005 Tribeca refinancing, the October 17, 2006 Judgment of Foreclosure and Sale was entered and first Kofi and then Joyce filed two more "eve of sale" bankruptcy petitions on December 1, 2006 and July 9, 2007. This latest petition by Joyce was filed while Kofi's December 1, 2006 bankruptcy case was still pending. All six of the prior filings were based upon optimistic predictions of Kofi's expected success in his business and all six came to naught.

As in the prior six bankruptcy cases, Joyce and Kofi's submissions in this seventh case do not demonstrate that they have any reasonable prospect of paying the enormous arrears on their debt to Tribeca and, at the same time, maintaining the current payments due on their mortgage. Assuming that their monthly mortgage payment continues at approximately $10,100,[2] Joyce's current gross income of $6,000 per month is obviously grossly insufficient. Kofi has no current income. His statement that he "recently landed some consulting work which will pay me a net income of $9,000 to $10,000 per month" is entirely unsubstantiated , but even if true this income combined with Joyce's income of $6,000 a month would be insufficient to support a $10,000 monthly mortgage obligation after payment of taxes and basic living expenses for a family of four. It is perfectly clear from the "attached letter" that Kofi's expectation of commission payments arising from the bridge project in Ghana is both speculative and distant in the future, at best.

Finally, the proffer of a $50,000 loan by Kofi's childhood friend would provide little in the way of adequate protection for Tribeca even if the loan were in fact made. A $50,000 cash infusion

---

[2] Tribeca has not provided the Court with information as to the current monthly payment obligation under the mortgage note.

would reduce by a relatively small amount the arrears on the Tribeca loan but would not provide adequate protection for the debt on an ongoing basis.

To summarize, after seven bankruptcies Joyce and Kofi have been unable to generate the financial resources to pay for their home. They have no equity in the property and insufficient income to pay current mortgage obligations even if Kofi's unsubstantiated claim of a new consulting job beginning in December comes to fruition. The Ghanaian bridge commissions, being dependent upon future events in Africa over which Kofi has no control, are highly speculative at this point, and in any event it will be many months before any commissions will be payable, during which time the indebtedness on the undersecured Tribeca mortgage will undoubtedly increase.

After seven bankruptcies over four years of ballooning defaults, no present or verifiable future capacity to pay current debt service, and no demonstrable likelihood that Joyce and Kofi will ever be able to pay off the debt which currently exceeds the value of their home, the time has finally come to allow Tribeca to enforce its contractual and state law rights. The motion must be granted.

**ORDER**

Upon the foregoing decision, and upon all of the papers submitted by the parties in support of and in opposition to the motion, it is hereby

**ORDERED** that the motion is granted annulling the automatic stay, *nunc pro tunc*, and it is further

**ORDERED** that the foreclosure sale held on July 10, 2007, by court-appointed Referee Joseph A. Vita, Esq., to foreclose the mortgage held by Tribeca, on the real property located at 9 Weaver Street, Scarsdale, New York 10583, is hereby ratified and confirmed, and it is further

**ORDERED** that the Referee may transfer the Referee's Deed to the successful high bidder, Tribeca, who may commence proceedings to gain possession of the subject premises.

Dated:  White Plains, NY
        November 29, 2007

                                                                            /s/ Adlai S. Hardin, Jr.
                                                                                  U.S.B.J.